## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Darrell Fair (#B-32994), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 CV 5776 |
| | ) | |
| v. | ) | |
| | ) | Judge Gary Feinerman |
| Warden Randy Pfister, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's motion for leave to file *in forma pauperis* [3] is granted. The Court authorizes and orders Plaintiff's trust fund officer to make deductions from Plaintiff's account and payments to the Clerk of Court in accordance with this order. Plaintiff may proceed only against Defendants Pfister and Lamb, and only on his claim relating to the conditions of confinement in the segregation unit. The Court on its own motion dismisses all other claims and Defendants on initial review pursuant to 28 U.S.C. § 1915A. The Court directs the Clerk to: (1) electronically send a copy of this order to the Supervisor of the Inmate Trust Fund Accounts at Stateville Correctional Center; (2) file the complaint [1]; (3) issue summonses for service on Defendants Pfister and Lamb; (4) terminate all defendants other than Pfister and Lamb as party defendant; and (5) send Plaintiff two blank USM-285 service forms, a magistrate judge consent form, filing instructions, and a copy of this order. The Court appoints the U.S. Marshals Service to serve Defendants Pfister and Lamb. Plaintiff has until 12/4/2017 to complete the USM-285 forms (one each for Pfister and Lamb) and return them to the Prisoner Correspondent. Failure to do so will result in the summary dismissal of this case. Plaintiff's motion for attorney representation [#4] is denied without prejudice to renewal later in this case. Status hearing set for 12/13/2017 at 9:50 a.m. Defense counsel shall arrange for the telephone appearance for the incarcerated pro-se Plaintiff for the status hearing.

## STATEMENT

Plaintiff Darrell Fair, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants, who are Illinois Department of Corrections officials. This matter is before the Court for ruling on Plaintiff's motions for leave to proceed *in forma pauperis* and for attorney representation, as well as for initial review of the complaint pursuant to 28 U.S.C. § 1915A. The Court grants Plaintiff's motion for leave to proceed *in forma pauperis*, but summarily dismisses the majority of his claims on initial review for failure to state an actionable claim. Plaintiff may proceed only on his claim against Defendants Pfister and Lamb that the conditions of his confinement in Stateville's segregation unit were unconstitutional.

Because Plaintiff is unable to prepay the filing fee, the Court grants Plaintiff's motion to proceed *in forma pauperis* and assesses an initial partial filing fee of $14.48 pursuant to 28 U.S.C. § 1915(b)(1). The trust fund officer at Plaintiff's place of incarceration is authorized and ordered to collect, when funds exist, the partial filing fee from Plaintiff's trust fund account and pay it directly to the Clerk of Court. Thereafter, the trust fund officer at Plaintiff's place of confinement is directed to collect monthly payments from Plaintiff's trust fund account in the amount of 20% of the preceding month's income credited to the account. Monthly payments shall be forwarded to the Clerk of Court each time the account balance exceeds $10 until the full $350 filing fee is paid. Separate deductions and payments shall be made with respect to each action or appeal filed by Plaintiff. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify Plaintiff's name and this case number.

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court is required to screen a *pro se* prisoner's complaint and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoner litigation claims in the same manner as ordinary motions to dismiss under Civil Rule 12(b)(6). *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Under federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). Courts also construe *pro se* complaints liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). In conducting the required threshold review of the complaint, the Court may properly rely on any written instruments attached to the pleadings as exhibits. *Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (citations omitted).

Plaintiff is an Illinois state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. All of the Defendants are Illinois Department of Corrections ("IDOC") employees. Plaintiff alleges the following facts, assumed true for purposes of the Court's threshold review.

On July 24, 2015, non-party internal affairs investigator W. Shevlin went to Plaintiff's cell

2

and presented him with an open cup. Shevlin demanded that Plaintiff provide a urine sample. Plaintiff, who has an enlarged prostate and finds it sometimes difficult to urinate, asked for time to comply. Once Plaintiff had dressed himself, Shevlin escorted him to the Internal Affairs office while they waited for him to produce a sample. Meanwhile, prison maintenance workers packed Plaintiff's belongings in his cell. About two hours later, following a shift change, Shevlin retrieved the cup from Plaintiff's cell. At that time, Plaintiff provided a urine sample.

Afterwards, Shevlin advised Plaintiff that his sample had tested positive for morphine. Shevlin nevertheless offered to "make the whole thing go away" if Plaintiff provided him with certain information. Plaintiff, insisting that he did not do drugs, asked that prison officials send the urine sample to be tested at an outside facility. Despite Plaintiff's protestations of innocence, he was placed under investigation pending the lab analysis. Plaintiff remained in segregation for 32 days instead of the 30 days permitted by IDOC administrative regulations. Plaintiff notified Stateville's assistant warden, Defendant Lamb, of the problem. Lamb promised to pass along Plaintiff's concerns to "the appropriate staff."

On July 24, 2015—the 32nd day after Plaintiff was placed in investigative status—he received a disciplinary report from Shevlin accusing him of violating a prison rule prohibiting the possession of drugs and drug paraphernalia. At the ensuing hearing, Plaintiff explained to the adjustment committee chairperson, Defendant Charles Best, that (1) he had spent an impermissible time in investigative segregation and (2) the "observation date" of the offense was wrong. Notwithstanding Plaintiff's objections, the adjustment committee found Plaintiff guilty of the charge. The penalty for the infraction was 6 months' demotion to "C" grade, 6 months in segregation, restitution of $2.45 (presumably, for the lab test), and a 6-month restriction on contact visits.

Plaintiff filed a grievance concerning what he viewed to be the defects in the disciplinary proceedings. Defendant Anna McBee, a grievance counselor, denied the grievance, characterizing it as "frivolous and without merit." Plaintiff appealed to the Administrative Review Board ("ARB") in Springfield, but his appeal was denied. The ARB retroactively changed the erroneously written observation date of the urinalysis collection three times, but declined to classify the mistake as one that affected Plaintiff's due process rights. Plaintiff seemingly attributes the ARB's actions to Defendant Debbie Knauer and the acting IDOC Director, Defendant John R. Baldwin.

Plaintiff spent a total of 8 months in F-House (apparently, Stateville's segregation unit). During that time, Plaintiff was unable to enroll in school, attend religious services, or go to the law library due to his segregation status. Cracks in the window allowed cold air to enter his cell. Mold and bacteria grew on the walls. The unit was infested with birds, mice, cockroaches, fruit flies, and other pests. On two separate occasions Plaintiff developed a bacterial rash that covered his arms. Plaintiff also spent time in a cell with a non-working toilet. Whenever Plaintiff had to relieve himself, he had to bang on the door of his cell until an officer let him out to use the bathroom. Plaintiff sometimes soiled himself while waiting for officers' reluctant assistance. Because plumbers had to order a part, the toilet went unrepaired for almost a month. In addition,

3

the ceiling leaked, and the windows did not close. According to Plaintiff, F-House was ultimately "condemned" and shut down.

When Plaintiff received his property from storage in January 2016, "numerous" [but unspecified] items were missing. The internal affairs officer who had inventoried Plaintiff's belongings failed either to date or sign his report. Worse, someone had forged Plaintiff's signature on the document.

Plaintiff has no viable claim under § 1983 arising from his 32-day detention in administrative segregation. No due process was required because Plaintiff had no protected liberty interest in remaining in the general population. *See Isby v. Brown*, 856 F.3d 508, 524-25 (7th Cir. 2017); *Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005). Prisoners generally do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary. *See Sandin v. Conner*, 515 U.S. 472, 483-86 (1995); *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Discretionary segregation, meaning segregation "imposed for administrative, protective, or investigative purposes," does not implicate the Constitution. *Townsend v. Fuchs,* 522 F.3d 765, 771-72 (7th Cir. 2008).

It is immaterial that Plaintiff spent 32 days instead of 30 days in segregation prior to receiving a disciplinary report. "In the absence of any liberty or property interest, any purported violation of prison regulations or state laws is not actionable under 42 U.S.C. § 1983." *Shelton v. Melvin*, No. 17 CV 50045, 2017 WL 951241, at *4 (N.D. Ill. Mar. 10, 2017) (citing *Wolfe v. Schaefer*, 619 F.3d 782, 784 (7th Cir. 2010) (citations omitted)). Moreover, only "significant hardships atypical of ordinary prison life implicate the Fourteenth Amendment." *Wilkinson v. Austin,* 545 U.S. 209, 222-23 (2005); *Sandin,* 515 U.S. at 484. *Sandin* found no liberty interest protecting against a 30-day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Id.* at 485. Even if administrative regulations called for Plaintiff's release after 30 days, the two additional days were too incremental a deprivation to raise a concern under the Due Process Clause. *See Townsend*, 522 F.3d at 766 (no liberty interest implicated in 59 days' administrative segregation); *Lekas*, 405 F.3d at 604-05, 612 (90 days' segregation at Stateville did not trigger liberty interest); *Thomas v. Ramos*, 130 F.3d 754, 761-62 (7th Cir. 1997) (no liberty interest in 70 days' combined administrative and disciplinary segregation).

Nor did the ensuing disciplinary proceedings violate due process. Disciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause. *Miller v. Dobier*, 634 F.3d 412, 414-15 (7th Cir. 2011). But deprivations that result in "atypical and significant hardship," as compared to prison life generally, do require due process before being imposed. *See Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005); *Obriecht v. Raemisch*, 565 F. App'x 535, 539-40 (7th Cir. 2014) (unpublished decision). Here, Plaintiff describes the allegedly deplorable conditions in the segregation unit and asserts that his time in segregation amounted to an "atypical and significant hardship." Consequently, the Court will assume that Plaintiff was entitled to due process.

4

The complaint and accompanying exhibits establish that Plaintiff was afforded due process. Due process in the context of a prison disciplinary hearing consists of five requirements: (1) advance, written notice of the disciplinary charges; (2) assistance of a fellow inmate or prison staff member in cases where the inmate is illiterate or the complexity of the issues makes it unlikely that the inmate will be able to defend himself comprehensively; (3) an opportunity to call witnesses and present documentary evidence to the extent consistent with institutional safety and correctional goals; (4) a written statement by the factfinder indicating the evidence relied on and the reasons for disciplinary action; and (5) "some evidence" to support the disciplinary board's decision. *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974); *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). Plaintiff does not allege that he was denied any of the above procedural safeguards. To the contrary, (1) Plaintiff has submitted the disciplinary report he received; (2) Plaintiff does not maintain that he is illiterate, or that the drug charge was complex; (3) the disciplinary summary (also attached to the complaint) reflects that Plaintiff attended a hearing where he was able to contest the charges; (4) Plaintiff received a copy of the written disciplinary decision; and (5) the "Final Summary Report" explained the basis for the adjustment committee's decision. The erroneous "observation date" on the initial disciplinary report did not amount to a due process violation, as a typographical or scrivener's error on the disciplinary report is not actionable under 42 U.S.C. § 1983. *Tonn v. Dittmann*, 607 F. App'x 589, 591 (7th Cir. 2015) (citing *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000)).

In *Tonn*, prison officials found a Wisconsin inmate guilty of misusing his medication. 607 F. App'x at 589. The inmate sued correctional officials, alleging that the disciplinary report referred to a non-existent rule number. The district court summarily dismissed the claim on initial screening under 28 U.S.C. § 1915A, and the Seventh Circuit affirmed dismissal of the claim as "easily dispatched." *Id.* at 591. The Seventh Circuit reasoned that, irrespective of the issuing officer's citation to the wrong administrative code provision, the disciplinary report stated that the plaintiff had possessed and misused prescription medication not prescribed to him, which *was* a violation of Wisconsin law, and that "some evidence" (the lab test results) supported the finding of guilt. *Ibid.*; *see also Dantzler v. Runge*, No. 13 CV 1094, 2013 WL 6244050, at *2 (S.D. Ill. Dec. 3, 2013) (dismissing the complaint on threshold review where, "[d]espite one typographical error in his I.D. number, Plaintiff received adequate notice of the factual basis for the charges against him"); *Simmons v. Superintendent*, No. 08 CV 0550, 2009 WL 378496, at *1 (N.D. Ind. Feb. 12, 2009) (holding that a scrivener's error on a disciplinary report as to the date of the incident did not deny the inmate plaintiff due process because he was provided with sufficient facts to inform him of the misconduct with which he had been charged).

Likewise, Plaintiff here has alleged no harm stemming from the wrong observation date, and the Court can conceive of none. The disciplinary report stated as follows:

> This Disciplinary Report is being issued during an investigation during which FAIR, DARRELL B32994 was placed in Investigative Status on 7/24/15. On 7/24/15 Stateville CC. ... Intelligence Unit conducted a drug urinalysis of FAIR using a "BMC Tox Cup" with a positive reading for OPI. The urine sample was subsequently sent to Quest Diagnostics Laboratory for further

testing. On the above observation date and approximate time reporting Intelligence Officer W. Shevlin (RI) received test results from Quest Diagnostics Laboratory. FAIR is in violation of 203 (Drug and drug paraphernalia). FAIR was identified by Institutional Graphics. End of Report.

"Offender Disciplinary Report" (unmarked Exhibit to Complaint). The clerical error in setting for the observation date, which was eventually corrected, had no bearing on the substance of the report. It was exceptionally clear that Plaintiff was receiving a disciplinary report at the end of an "investigation" (i.e., receipt of the results of urinalysis by an outside lab) in connection with which he had spent 32 days in investigative segregation.

Moreover, "some evidence" supports the disciplinary decision. The adjustment committee based its decision on a drug test run at Stateville that showed positive results for "OPI" (evidently, opium, heroin, or morphine), as well as Quest Diagnostics' confirmation that there was morphine in Plaintiff's urine. *See* "Final Summary Report," attached as unmarked exhibit to Complaint. The test results constitute ample evidence of Plaintiff's guilt.

Insofar as Plaintiff alleges that there might have been some issue relating to the empty test cup left unattended in his cell for two hours, any such challenge is without merit. First, the disciplinary summary does not indicate that Plaintiff raised any such challenge at his hearing. Second, while it is perhaps conceivable that another inmate tampered with the cup, it is highly unlikely that anyone would have or could have managed to do so. Plaintiff offers no reason to suspect that the inmates who packed his belongings had a grudge against him. More importantly, it stretches credulity to think that the cup already had urine in it, or that inmates were otherwise able to contaminate the cup, without Plaintiff or Officer Shevlin noticing that the cup was no longer empty. The mere theoretical possibility of inmate interference is not a strong enough defense to nullify the strong evidence of the lab test results.

In addition, Plaintiff has no viable federal claim against the named Defendants as to the loss of certain belongings that were packed in storage while he remained in segregation. A random and unauthorized deprivation of property by a state employee does not constitute a due process violation if the State provides a meaningful post-deprivation remedy. *Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007); *Snyder v. Nolen*, 380 F.3d 279, 298 (7th Cir. 2004). The Illinois Court of Claims provides Plaintiff with a vehicle to redress his property loss. *See Sorrentino v. Godinez*, 777 F.3d 410, 413 (7th Cir. 2015). Plaintiff may also file an action in the state circuit court for the tort of conversion. *See Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Because the State has provided an adequate post-deprivation remedy, the loss of Plaintiff's property is not actionable under 42 U.S.C. § 1983. *See Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002). In any event, Section 1983 is premised on the wrongdoer's personal responsibility; therefore, an individual cannot be held liable in a civil rights action unless he caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citations omitted). Plaintiff does not suggest that any Defendant was personally involved in—or even aware of—the alleged loss or theft of his personal belongings.

6

Plaintiff has stated a potentially viable claim as to the conditions of confinement he allegedly endured while in disciplinary segregation. Incarcerated persons are entitled to confinement under humane conditions that satisfy "basic human needs." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012) (citations omitted). "The State must provide an inmate with a 'healthy, habitable environment.'" *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (citations omitted). Correctional officials violate the Eighth Amendment when they show deliberate indifference to adverse conditions that deny "the minimal civilized measure of life's necessities." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Here, Plaintiff complains of very cold air in his cell, the presence of mold and "bacteria" on the walls, and pest infestation, and alleges that he suffered physical harm as a result of those living conditions. And because Plaintiff's claims involve "potentially systemic," rather than "clearly localized" constitutional violations, Stateville's warden and assistant warden may be proper Defendants. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996); *Lieberman v. Budz*, No. 00 C 5652, 2010 WL 369614, *8 (N.D. Ill. Jan. 28, 2010). Accordingly, Defendants Pfister and Lamb must respond to the complaint. Nothing in this order, which is based on preliminary review of the complaint, precludes any legal argument that Defendants may advance in response to the complaint.

The Court instructs the Clerk of Court to issue summonses for service of the complaint on Defendants Pfister and Lamb. The Court further instructs the Clerk to mail Plaintiff two blank USM-285 forms. Plaintiff has until December 4, 2017 to complete the USM-285 forms (one each for Pfister and Lamb) and return them to the Prisoner Correspondent. Failure to do so will result in the summary dismissal of this case.

The Court appoints the U.S. Marshals Service to serve Defendants Pfister and Lamb. The Court directs the Marshals Service to make all reasonable efforts to serve Defendants. The Court authorizes the Marshals Service to send a request for waiver of service to Defendants in the manner prescribed by Civil Rule 4(d) before attempting personal service.

The Court advises Plaintiff that there is a two-year statute of limitations for civil rights actions in Illinois. *See Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); 735 ILCS § 5/13-202. Plaintiff should therefore attempt to identify any additional Defendants as soon as possible. *See Vance v. Rumsfeld*, 701 F.3d 193, 211 (7th Cir. 2012) (Wood, concurring) ("[W]e do not permit relation back under Federal Rule of Civil Procedure 15(c)(1)(C) where the plaintiff simply did not know whom to sue.") (citations omitted); *Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993); *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980).

The Court denies Plaintiff's motion for attorney representation without prejudice. Although "[t]here is no right to court-appointed counsel in federal civil litigation," *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), the Court has discretion to request that an attorney represent an indigent litigant on a volunteer basis under 28 U.S.C. § 1915(e)(1). A *pro se* litigant's request for assistance is entitled to careful consideration. *Diggs v. Ghosh*, 850 F.3d 905,

911-12 (7th Cir. 2017). In making the decision whether to recruit counsel, the Court must engage in a two-step analysis: (1) has the plaintiff made a reasonable attempt to obtain counsel on his own behalf or been effectively precluded from doing so; and, if so, (2) given the factual and legal complexity of the case, does this particular plaintiff appear competent to litigate the matter himself. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc). This analysis does not focus solely on the plaintiff's ability to try the case, but on his ability to gather evidence and prepare and respond to motions. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013). Factors the Court must consider include: (1) the stage of litigation, *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (holding that it is difficult to make an accurate determination regarding a plaintiff's ability to litigate the matter when case is still in "its infancy"); (2) plaintiff's submissions and pleadings, *Olson*, 750 F.3d at 712 (well-written pleadings and appearance that plaintiff can follow instructions indicate that counsel is not needed); (3) medical and mental health issues, *Olson*, 750 F.3d at 712; (4) transfer to a different facility, *Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) (transfer to a different facility may impede plaintiff's ability to obtain evidence including affidavits/declarations from others to support his/her claim); (5) plaintiff's capabilities, including intelligence (IQ), literacy, degree of education, communication skills, and litigation experience, *Pruitt*, 503 F.3d at 655; *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014) (recruitment of counsel required for a blind inmate with a tenth-grade education); *Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014) (enlistment of counsel was necessary for a functionally illiterate inmate); and (6) complexity of the case, *Dewitt*, 760 F.3d at 658; *Henderson*, 755 F.3d at 566; *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010); *Pruitt*, 503F.3d at 655-56.

After considering the above factors, the Court concludes that solicitation of counsel for Plaintiff is not currently warranted. First, Plaintiff has failed to show either that he has made reasonable efforts to retain private counsel or that he has been effectively precluded from doing so. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013). Second, this case is not very complex, as the sole remaining claim concerns living conditions in Stateville's segregation unit. Plaintiff can easily testify about the hardships he endured. Third, at this early juncture, the Court cannot make any accurate determinations regarding either Plaintiff's abilities or the potential merit of this lawsuit. *See Romanelli*, 615 F.3d at 852 (approving, at the screening stage of the proceedings, the denial without prejudice of a motion for attorney representation). Fourth, the Court notes that this is Plaintiff's third lawsuit in this District, and that his initial submissions are lucid and reasonably well written. Plaintiff seems perfectly capable of presenting his claims, notwithstanding his professed vision problems. Nevertheless, should the case proceed to a point that assistance of counsel is appropriate, the Court will entertain a renewed motion for attorney representation.

November 6, 2017

_____
United States District Judge

8